S. & S. PHARMACEUTICAL CO., Inc., a Corporation; and Samuel Fox, Individually and as an officer of said Corporation; Petitioners,

v.

FEDERAL TRADE COMMISSION, Respondent.

No. 25569.

United States Court of Appeals
Fifth Circuit.

March 5, 1969.

488

Solomon H. Friend, Bass & Friend, New York City, for petitioners.

J. B. Truly, Asst. Gen. Counsel, F. T. C., W. Risque Harper, Atty., F. T. C., Washington, D. C., James McI. Henderson, Gen. Counsel, for F. T. C.

Before PHILLIPS,* BELL, and LEWIS R. MORGAN, Circuit Judges.

PER CURIAM:

This case comes to us on a petition to review and set aside a cease and desist order of the Federal Trade Commission issued upon a complaint charging that S. & S. Pharmaceutical violated § 5(a) (1) of the Federal Trade Commission Act.[1] The petition will be denied and the order enforced.

The *modus operandi* used by S. & S. to open new accounts was double-barreled. One barrel consisted of unsolicited shipments of S. & S.'s reducing tablet "Galaxon" to druggists selected from a trade directory on the basis of their credit ratings. The terms of shipment were said to be "consignment pay-on-reorder". The other barrel was an advertising campaign conducted in the local newspaper over the name of the selected druggist, placed and paid for by S. & S.[2] Although S. & S. claimed that these ads were not placed without the consent of the druggist named, the record is clear that some of the druggists never saw the ad until it was shown them by customers coming into their stores in response thereto. The result of this double-barreled approach was that the druggist was forced into selling the "Galaxon" by the customers' response to the newspaper ads running over the druggists' names. S. & S. had access to information as to which druggists were selling "Galaxon" as a result of a coupon program. With each bottle of "Galaxon", the customer received a

1. 15 U.S.C. § 45(a) (1) Unfair methods of competition in commerce, and unfair or deceptive acts or practices are hereby declared unlawful.

* Of the Tenth Circuit, sitting by designation.

2. The ads were placed by "The Drewand Company" an advertising agency controlled by petitioners.

coupon which if sent to S. & S. would result in his receiving a discount certificate worth $1.00 on the purchase of the next two bottles of "Galaxon", normally priced at $3.00 per bottle. The coupons sent to S. & S. would name the druggist who had made the original sale. On the basis of this knowledge as to sales, S. & S. would bill the druggist for the amount sold. If the bills were not paid, the account was turned over to Dun & Bradstreet Collection Agency.

The Commission found that the scheme placed the prospective druggist-customer in a situation where he must take some affirmative action in order to avoid having the product foisted upon him. The commission concluded that this was "an inherently unfair method of competition which 'pushes' a misinformed retailer into becoming an unwilling buyer or agent." The commission ordered S. & S. to cease and desist from:

1. Shipping or sending any merchandise to any retail establishment without having previously obtained the written and express authorization or consent to the complete terms and conditions of sale or consignment, and resale, of any merchandise by the person, company, or corporation to whom such merchandise is sent.

2. Placing any newspaper advertisement, or causing the dissemination of an advertisement in any other manner, for the purpose of publicizing such product, which advertisement uses the name of any drug store or retail establishment without having previously obtained the written and express authorization or consent of the druggist or retail establishment whose name appears in the advertisement.

■ ·We reject at the outset the contention of S. & S. that neither paragraph of the order is supported by substantial evidence. We find both paragraphs to be supported by substantial

evidence on the record when considered as a whole. See Universal Camera Corp. v. NLRB, 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

■ The chief contention of S. & S. is that paragraph one of the order is too broad and unnecessarily hampers its operations. We start from the proposition that the commission "has wide latitude for judgment and the courts will not interfere except where the remedy selected has no reasonable relation to the unlawful practices found to exist". Federal Trade Commission v. National Lead Co., 1957, 352 U.S. 419, 77 S.Ct. 502, 509, 1 L.Ed.2d 438, 445. See also Federal Trade Commission v. Colgate-Palmolive Co., 1965, 380 U.S. 374, 85 S.Ct. 1035, 13 L.Ed.2d 904. We hold that the order here bears such a "reasonable relation" to the practices found to be unfair or deceptive. The reasonableness of the relationship becomes apparent when the unfair and deceptive methods found are related to the requirements of paragraph one of the order that the authorization or consent be in writing. We cannot hold that the commission exceeded its authority under the circumstances here.

Moreover, the order is not as stringent as it first appears. The parties construe this requirement as being applicable only to initial orders of particular products of S. & S. Thus, if S. & S. and the druggist have reduced their terms and conditions of doing business to writing, subsequent reorders of the same product or products need not be in writing unless there is a change in the terms and conditions of the previous written order. We agree with this construction.

We conclude that the commission's order is supported in fact and law. The petition to review and set aside the cease and desist order of the commission is denied, and the order will, pursuant to statute, be enforced. 15 U.S.C.A. § 21(c).

Enforced.